## MITCHELL v. BOWMAN.

### No. 2301.

Circuit Court of Appeals, Tenth Circuit.

Nov. 10, 1941.

446

Erl H. Ellis, of Denver, Colo. (Ellis, Melville & Winner, of Denver, Colo., on the brief), for appellant.

Edwin A. Williams, of Denver, Colo. (W. David McClain, of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This appeal presents the question of priority between two conflicting claims to an impounded fund in bankruptcy. Lester L. Jones is an architect engaged in business in Denver, Colorado. Associated Consultants, herein called Associated, is apparently the trade name of Ben F. Mitchell. In July, 1938, Jones and Associated entered into a written contract which provided that the former employed the latter to contact public boards which desired to obtain grants and loans from the Public Works Administration with which to construct public buildings; that the duties of Associated should be to secure contracts from such boards for architectural services, including study-drawings, plans and specifications, together with supervision, to prepare all reports and data for submission to the Public Works Administration, and to render all necessary supervisory service in the construction of such buildings, under the direction of Jones; that Associated should be paid for such services by a division of the fees obtained from the clients for architectural services on the basis of two-thirds to Associated and one-third to Jones; and that certain expenses should be paid out of the share distributed to Associated. In fulfillment of the contract, Mitchell solicited and secured contracts employing Jones to render the architectural services in connection with the construction of certain public buildings, one being in Adams County, Colorado. Mitchell sued Jones in the state court for his share of the fees which Jones had collected and failed to divide; and in 1939, he recovered judgment for $2,599.49. Jones executed his promissory note to the National City Bank of Denver, also a written instrument assigning to the bank as collateral security for such note all proceeds due from Adams County; the Board of Commissioners of the county accepted the assignment in writing; and the assignment with the acceptance endorsed thereon was filed for record in August, 1938. In June, 1939, Bowman purchased the note and collateral security from the bank, paying $368.95 therefor. Jones was adjudicated a bankrupt, and the unliquidated claim of Mitchell was liquidated in the bankruptcy court in the sum of $1,397.42, representing his share of fees earned by Jones under contracts secured by Mitchell but arising after and not covered by the accounting and judgment in the state court. The sum of $461.27, representing

the balance due by Adams County for architectural services rendered under its contract with Jones, was deposited in the registry of the bankruptcy court. Bowman and Mitchell each asserted priority of right to such fund. After certain proceedings which need not be detailed, the court determined that Bowman had a prior right over Mitchell to the fund. Mitchell appealed.

██ It was contemplated by the parties to the contract that Mitchell should solicit and secure from counties, cities, towns and other governmental agencies contracts employing Jones to prepare plans, drawings and specifications for public buildings to be constructed. Mitchell's compensation was to consist of a share of the money paid for the architectural services rendered by Jones under contracts secured in that manner. In other words, Mitchell's compensation was contingent and was payable only out of the fund which he was to assist in bringing into existence. Jones was not obligated to pay him anything other than two-thirds of such fund, but the contract expressly entitled him to that portion of it. It is the law in Colorado that a contract which constitutes a promise to pay one for services rendered out of a fund created in whole or in part by the efforts of the promisee creates a lien on the fund when it comes into existence, and that equity will enforce such lien. American Agency & Investment Co. v. Gregg, 90 Colo. 142, 6 P.2d 1101. It is readily manifest that Mitchell acquired and had a lien on the fund in question.

█ The fund was not in existence at the time of the execution of the contract; and, in a strictly technical sense, the lien could not attach until the fund came into being. But when the fund actually became existent, the lien immediately attached and related back to the time of the execution of the contract. Clatworthy v. Ferguson, 72 Colo. 259, 210 P. 693.

██ The bank did not have actual notice of the interest of Mitchell in the fund at the time it acquired its assignment, or at the time the assignment was filed for record. And no notice or other writing relating to his interest was ever filed for record in Adams County. But the recording statutes of Colorado do not have application to an equitable lien upon personal property. Whiteside v. Rocky Mountain Fuel Co., 10 Cir., 101 F.2d 765, certiorari denied, 307 U.S. 640, 59 S.Ct. 1038, 83 L. Ed. 1521.

The order is reversed and the cause remanded with direction to allow the claim of Mitchell as a secured claim with priority over that of Bowman to the fund in controversy.